# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**DIAMOND TRANSPORTATION LOGISTICS, INC.,**

    **Plaintiff,**

  v.

**THE KROGER CO.** *et al.*,

    **Defendants.**

:

:

:

Case No. 2:19-cv-5448
Judge Sarah D. Morrison
Magistrate Judge Chelsey M. Vascura

## OPINION AND ORDER

On December 13, 2019, Plaintiff Diamond Transportation Logistics, Inc. ("Diamond") first filed this suit against Defendants The Kroger Co. ("Kroger"), American International Group, Inc. ("AIG"), Granite State Insurance Company ("Granite"), and Gail Maureen Lawrence d/b/a G.M. Lawrence Insurance Brokerage ("GML"). (ECF No. 1.) On December 10, 2020, Kroger filed a Crossclaim against Granite and Third-Party Complaint against GML.[1] (ECF No. 75.)

This matter is now before the Court on Granite's Motion to Dismiss Kroger's Crossclaim (ECF No. 87) and GML's Motion to Strike or Dismiss Kroger's Third-Party Complaint (ECF No. 100). As to Granite's motion, Kroger has responded (ECF No. 92) and Granite replied (ECF No. 98). Kroger also responded to GML's motion (ECF No. 105), to which GML has replied (ECF No. 106). Accordingly, both motions are ripe for decision.

---

[1] After filing its Complaint, but before Kroger filed its Third-Party Complaint, Diamond voluntarily dismissed its claims against GML. (ECF No. 45.)

## I. BACKGROUND

The following summary draws from the allegations in Kroger's Crossclaim/Third-Party Complaint, which are considered as true for purposes of the pending motions. *See Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016).

Kroger alleges that it entered into a Non-Dedicated Contract Carrier Transportation Agreement with Diamond, pursuant to which Diamond agreed to transport certain goods across the country in support of Kroger's business operations. (ECF No. 75, ¶ 1. *See also* ECF No. 1-1.[2]) The Transportation Agreement provides, in part, as follows:

> [Diamond], in consideration of entering into the [Transportation Agreement] with [Kroger] and as a condition precedent thereto, does hereby expressly agree to indemnify, defend and hold harmless [Kroger] . . . from and against any and all suits, actions, liabilities, judgments, claims, demands, or costs or expenses of any kind (including attorney's fees) resulting from (i) damage or injury (including death) to the property or person of anyone, whomsoever they may be, arising or resulting at any time or place from any operations hereafter performed either by [Diamond], its agents, employees or subcontractors in performing services for Kroger or (ii) the negligence, willful misconduct or violation of law by [Diamond], its agents, employees or subcontractors except to the extent that such liability is caused by the sole negligence or willful misconduct of Kroger. . . .
>
> In order to fulfill its obligation above, but it shall in no means be construed as limitation thereto, [Diamond] will maintain at all times while providing services for Kroger, at [Diamond's] own cost and expense, insurance coverage of the types and in the amounts as described in [the Transportation Agreement] with a company that has an A.M. Best Co. rating of "A" or better. . . . All insurance must be primary and not excess or contributing with any insurance or self-

---

[2] A Non-Dedicated Contract Carrier Transportation Agreement between Kroger and Diamond was attached to Kroger's Crossclaim/Third-Party Complaint. (*See* ECF No. 75-1.) That version was not effective during the relevant time period, however. Diamond's Complaint includes a copy of the Transportation Agreement as in effect at the relevant time. (*See* ECF No. 1-1.) The Court cites that version here.

> insurance maintained by Kroger. [Diamond] will deliver to Kroger, prior to providing services, a Certificate of Insurance including "The Kroger Co. and Kroger's affiliates and subsidiaries" as Additional Insured. . . .

(ECF No. 1-1, PAGEID # 29.)

Kroger believes that Diamond engaged GML to procure the insurance coverage required by the Transportation Agreement, and specifically alleges that GML had knowledge of the provision requiring that Kroger be covered as an additional insured on Diamond's policies. (*Id.*, ¶¶ 13, 15, 16.) GML, "as express agent for Diamond," procured the coverage, which was underwritten by Granite. (*Id.*, ¶ 17.) Kroger alleges that "GML created and issued a certificate of insurance purportedly evidencing the required insurance coverage for Diamond and Kroger, its parents, subsidiaries, and affiliates, as additional insureds." (*Id.*, ¶ 19.) Finally, Kroger alleges "[u]pon information and belief, [that] GML had express or apparent authority to bind Granite to the terms of coverage, including coverage of additional insureds under the Granite policy." (*Id.*, ¶ 18.)

On December 13, 2015, a driver for AK Freight, Inc. (a Diamond subcontractor transporting Kroger goods) crossed a Missouri highway median and collided with a Dodge Journey, killing all three passengers. (*Id.*, ¶ 20.) The accident led to litigation (the "Missouri Litigation"). (*Id.*) Granite "stepped into the Missouri Litigation on behalf of Diamond," and settled the claims against Diamond for the amount of the policy limit. (*Id.*, ¶ 22.) However, the settlement did not release claims against Kroger and did not secure dismissal of the Missouri Litigation. (*Id.*) Kroger alleges that Granite had "clear knowledge of the potential for a direct claim against Kroger in the Missouri Litigation" and was "required to insure Kroger as

3

additional insured." (*Id.*) Soon after, the Missouri Litigation plaintiff amended its complaint to name Kroger as a defendant. (*Id.*, ¶ 23.) Kroger demanded coverage and defense from Granite, but maintains "upon information and belief, [that] demands for such coverage for Kroger as additional insured had already been made several times throughout the Missouri Litigation by counsel for Diamond[.]" (*Id.*, ¶ 24.)

Granite denied Kroger's coverage demand on the grounds that Diamond's insurance policy did not provide the proper language or endorsement. (*Id.*, ¶ 25.) Diamond also refused to indemnify Kroger. (*Id.*, ¶ 28.) Kroger then settled the claims against it in the Missouri Litigation, paying all "legal fees, costs, expenses, and settlement amounts" out of pocket. (*Id.*)

Kroger's Crossclaim against Granite seeks "a declaration . . . that Granite had a duty to defend and indemnify Kroger in the Missouri Litigation," and brings claims for indemnification and bad faith. (*Id.*, ¶¶ 30–58.) Kroger's Third-Party Complaint against GML alleges fraudulent misrepresentation, negligent misrepresentation, and "third-party beneficiary." (*Id.*, ¶¶ 64–82.)

II. ANALYSIS

    A. **Kroger's Third-Party Complaint against GML fails to satisfy Rule 14(a).**

GML moves to strike or dismiss Kroger's Third-Party Complaint pursuant to Federal Rules of Civil Procedure 14(a), 12(b)(2), and 12(b)(6). (ECF No. 100.) Rule 14(a) is dispositive.

4

Rule 14 governs third-party practice. Fed. R. Civ. P. 14. In particular, the Rule allows a defendant, "as a third-party plaintiff, [to] serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a). "The purpose of Rule 14 is to permit additional parties whose rights may be affected by the decision in the original action to be joined so as to expedite the final determination of the rights and liabilities of all the interested parties in one suit." *Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 805 (6th Cir. 2008). With that said, "[t]hird party pleading is appropriate only where the third-party defendant's liability to the third-party plaintiff is dependent on the outcome of the main claim; one that merely arises out of the same set of facts does not allow a third-party defendant to be impleaded." *Id.* (citing *United States v. Olavarieta*, 812 F.2d 640, 643 (11th Cir. 1987)). For proper impleader, a third-party complaint must allege that a third-party defendant is liable to the third-party plaintiff for all or part of the liability owed by the third-party plaintiff on the underlying action. *Id.* In other words, a "third-party defendant can be properly impleaded into an action <u>only if that party is subject to derivative liability</u>." *Bd. of Trustees of Ohio Laborers' Fringe Benefit Programs v. West End Land Dev., Inc.*, 664 F. Supp. 2d 850, 854 (S.D. Ohio 2009) (King, M.J.) (emphasis added). "The burden of showing that a claim against a third-party defendant is subject to derivative liability rests with the third-party plaintiff." *United Inventory Servs., Inc. v. Tupperware Brands Corp.*, No. 1:08-cv-1208-JDB-cgc, 2010 WL 11606123, at *2 (W.D. Tenn. Apr. 12, 2010) (citation omitted). *See also* 25 Fed.

Proc., L. Ed. § 59:216 (citing *Admin. Comm. of Wal-Mart Assocs. Health and Welfare Plan v. Willard*, 216 F.R.D. 511 (D. Kan. 2003)).

GML argues that Kroger's claims against it are independent from and unrelated to Diamond's claims against Kroger, and thus are not the proper subject of a third-party complaint. (ECF No. 100, 7.) Kroger argues in response that "Kroger's claims against GML are based specifically on Diamond's Complaint asserting claims against Kroger, in that GML's failure to properly add Kroger to Diamond's policy—as Kroger contracted with Diamond to do—in turn imputes liability upon GML as the responsible party as to Diamond's claims against Kroger." (ECF No. 105, 3.) The Court agrees with GML. Although Kroger's claims against GML arguably arise out of the same events as Diamond's claims against Kroger, Kroger has not shown that GML is derivatively liable to it on Diamond's claims.

Diamond's Complaint alleges that Kroger: breached the Transportation Agreement by "improperly withholding payments due to Diamond" and using those "improperly withheld funds to settle the Missouri Litigation" (ECF No. 1, ¶¶ 25–31); committed fraud against Diamond by inducing it to sign a Second Indemnification Agreement when Kroger "never intended to actually continue to do business with Diamond" (*id.*, ¶¶ 34–36); and was unjustly enriched by its conduct (*id.*, ¶¶ 64–65). By contrast, Kroger's Third-Party Complaint against GML alleges that GML fraudulently and negligently misrepresented to Kroger (via the Certificate of Insurance) that she had procured insurance on Diamond's behalf that named Kroger as an additional insured (ECF No. 64, ¶¶ 65–77), and that GML failed to

6

perform under the contract with Diamond, to which Kroger was a third-party beneficiary (*id.*, ¶¶79–82).

The Third-Party Complaint does not allege that GML is or may be liable to Kroger for any part of Diamond's claims against it. Even if Diamond succeeds on its claims against Kroger, there is no allegation that GML was involved in, or in any way responsible for, Kroger's conduct underlying Diamond's claims. Put another way, Kroger's status as an additional insured (or not) has no causal relationship to Diamond's claims against Kroger. Kroger's Third-Party Complaint against GML is not an attempt to transfer the liability asserted against it *by* Diamond *to* GML; Kroger's claims against GML are separate and independent from Diamond's claims against Kroger.

Kroger has not satisfied the requirements of Rule 14(a). As a result, GML's Motion to Strike or Dismiss Kroger's Third-Party Complaint is **GRANTED**.

      **B.**    **Kroger's Crossclaim survives Granite's Motion to Dismiss.**

Citing Rule 12(b)(6), Granite moves to dismiss Kroger's Crossclaim on the grounds that it fails to state a claim upon which relief may be granted. Rule 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal alteration and quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Supreme Court has explained:

7

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Directv, Inc. v. Treesh*, 487 F.3d, 471, 476 (6th Cir. 2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Granite argues that Kroger's Crossclaim fails for three reasons: (1) Kroger failed to plead facts supporting its allegation that GML was Granite's agent and had authority to bind Granite to insurance coverage; (2) Kroger failed to allege that Granite had notice of any claim or potential claim against Kroger until after the policy was exhausted; and (3) Kroger's bad faith claim is futile.

    **1.    The Court declines to engage in a choice of law analysis at this stage.**

The Court will first address the parties' arguments on choice-of-law. "In a diversity action involving an insurance contract, a federal court applies the substantive law of the forum state"—in this instance, Ohio. *Talley v. State Farm Fire and Cas. Co.*, 223 F.3d 323, 326 (6th Cir. 2000) (citing *Erie R. Co. v. Tompkins*,

8

304 U.S. 64 (1938)). That principle extends to the forum state's choice-of-law rules. *Klaxon Co v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 498 (1941).

Granite argues that the Court must engage in two separate analyses for choice of law, encouraging the Court to apply California law to Kroger's "coverage claims" (declaratory judgment and indemnification), and Missouri law to its bad faith claim. (ECF No. 87, 3–5.) Kroger argues only that a choice-of-law analysis is premature. (ECF No. 92, 2.) The Court declines to undertake the choice-of-law analysis at this time, in favor of allowing the factual record on this point to more fully develop. *See Lunkenheimer Co. v. Pentair Flow Control Pac. PTY Ltd.*, 1:11-cv-824, 2014 WL 4450034, at *4 (Sept. 10, 2014) (Black, J.) ("Where, as here, the choice of law analysis is a complicated, fact-intensive jumble, courts routinely decline to determine the issue at the motion to dismiss stage.") (collecting cases).

### 2. Kroger's failure to allege facts supporting the conclusion that GML was Granite's agent is irrelevant.

Granite first argues that Kroger failed to plead facts supporting the conclusory allegation that GML "had express or apparent authority to bind Granite" to the insurance coverage summarized in the Certificate of Insurance. (ECF No. 87, 7–10.) In denying Granite's earlier motion to dismiss Diamond's claims, this Court stated:

> Granite seizes on Diamond's reference to a certificate of insurance in its Complaint and argues that Diamond fails to state a claim because a certificate of insurance is not insurance coverage. This argument ignores the breadth of Diamond's allegations.

(ECF No. 51, 3.) Once again, Granite ignores the breadth of the allegations against it.

9

The Court has carefully reviewed Kroger's crossclaims, which are supported by an insurance policy, underwritten by Granite, that purports to insure Diamond during the time period of the Missouri Litigation. (ECF No. 75-1, PageID # 1654, *et seq*.) Kroger alleges that it is an "insured" as defined in Section II.1.e. of that policy, which provides:

> The following are "insureds":
>
> a.   You [Diamond, as named insured] for any covered "auto".
>
> . . .
>
> e. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

(*Id.*, PAGEID # 1685. *See also* ECF No. 75, ¶¶ 26, 33.) Kroger then alleges that Granite breached the insurance contract, and seeks both declaratory judgment and indemnification. (ECF No. 75, ¶¶ 33–44.) Kroger's crossclaims against Granite depend on the policy language—not on GML's relationship with Granite.

### 3. Kroger sufficiently alleges that Granite had notice of potential claims against it prior to exhaustion of the policy.

Granite next argues that Kroger's Crossclaim should be dismissed because it fails to allege facts establishing that Granite had notice of any claim or potential claim against Kroger until after the policy was exhausted. (ECF No. 87, 10.) The Court disagrees. Kroger has alleged, "upon information and belief, [that] demands for such coverage for Kroger as additional insured had already been made several times throughout the Missouri Litigation by counsel for Diamond, well before the Amended Complaint was filed bringing Kroger into the fold as a named Defendant."

10

(*Id.*, ¶ 24.) Kroger has sufficiently alleged that Granite had notice of potential claims against it before Granite exhausted the policy settling the Missouri Litigation for Diamond.

### 4. Granite has not shown that Kroger's bad faith claim is futile.

Finally, Granite argues that Kroger's bad faith claim is futile. Piggybacking the notice and exhaustion theory, Granite argues that "there can be no bad faith in the absence of coverage." (ECF No. 87, 17.) The Court's ruling that Kroger sufficiently alleged that Granite had notice moots this argument.

Accordingly, Granite's Motion to Dismiss Kroger's Crossclaim is **DENIED**.

## III. CONCLUSION

For the reasons set forth above, GML's Motion to Strike or to Dismiss Kroger's Third-Party Complaint (ECF No. 100) is **GRANTED**. The Third-Party Complaint against GML is **DISMISSED** without prejudice to refiling as a separate action.

Further, Granite's Motion to Dismiss Kroger's Crossclaim (ECF No. 87) is **DENIED**.

    **IT IS SO ORDERED.**

    /s/ Sarah D. Morrison
    **SARAH D. MORRISON**
    **UNITED STATES DISTRICT JUDGE**