UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DIAMOND TRANSPORTATION
LOGISTICS, INC.,
:
        **Plaintiff,**

    **v.**

THE KROGER CO., INC., *et al.*,  :

        **Defendants.**

**Case No. 2:19-cv-5448**
**Judge Sarah D. Morrison**
**Magistrate Judge Chelsey M.**
**Vascura**

## OPINION AND ORDER

On December 13, 2015, Hardeep Singh lost control of his tractor-trailer, killing three travelers on a Missouri highway. Pursuant to a written agreement between Plaintiff Diamond Transportation Logistics, Inc. and Defendant The Kroger Co., Inc., Diamond had arranged for that truck to haul a load of Kroger cargo from Arizona to Indiana. The decedents' family brought suit against Diamond, Kroger, and others. Both Diamond and Kroger settled before trial. This action arises out of the companies' efforts to minimize their losses.

The case is presently before the Court on four motions for summary judgment on Diamond's claims against Kroger (ECF Nos. 157, 173) and Kroger's counterclaims against Diamond (ECF Nos. 158, 174), and one motion to strike expert testimony (ECF No. 175).

For the reasons set forth below:

- Kroger's Motion to Strike is **GRANTED**;

- Summary judgment is **GRANTED to Kroger** on Counts One, Two, and Five, and Counterclaims One and Two; and

- Summary judgment is **GRANTED to Diamond** on Counterclaims Three, Four, and Five.

## I.    FACTUAL BACKGROUND

Kroger, a family of grocery stores and supermarkets, engaged Diamond, a trucking company, to transport goods across the country. (2010 Transportation Agreement[1], PAGEID # 14.) A Non-Dedicated Contract Carrier Transportation Agreement (the "Transportation Agreement") governs their relationship.[2] (*Id.*) During the relevant timeframe, Diamond was doing $17–20 million in business for Kroger each year. (Cole Dep. 1, ECF No. 142, 41:24–42:6.)

### A.    The December 13, 2015 accident

On December 13, 2015, a Diamond truck[3] hauling Kroger goods crossed the median on I-44 near Rolla, Missouri, and struck a minivan carrying a medical

---

[1] The 2010 Transportation Agreement is attached to Diamond's Complaint as Exhibit A. (ECF No. 1-1, PAGEID # 14–42.)

[2] Relevant provisions of the Transportation Agreement are discussed in Section IV, *infra*.

[3] The driver, Hardeep Singh, was employed by AK Freight, Inc. (Atwal 2021 Dep., ECF No. 160, 36:17.) The truck was registered to H&A Transportation, but was leased to AK Freight. (*Id.*, 30:6–8.) Diamond owned the trailer, and coordinated the load's transport. (ECF No. 143-1, PAGEID # 2407. *See also* ECF No. 152-3, PAGEID # 3808.)

doctor, her veterinarian husband, and her mother. (*See* ECF No. 154, PAGEID # 4100.) All three were killed as a result of the accident. (*See* ECF No. 182-4.)

Late that evening, Diamond notified Kroger that an accident had occurred. (ECF No. 154, PAGEID # 4093.) The next morning, a Kroger logistics claims administrator responded:

> I hope no one was hurt in this accident.
> I will need pictures of this load.
> Copy of the [Bill of Lading]
> Packing list

(*Id.*, PAGEID # 4092.) The response from Diamond pertained only to the cargo. (*Id.*, PAGEID # 4091.)

## B.    The Missouri Litigation

Ten days later, Diamond received notice that the decedents' family planned to file suit for wrongful death. (ECF No. 152-1, PAGEID # 3740–42.) Diamond's auto liability insurance carrier, Granite State Insurance Co., was given similar notice. (*Id.*, PAGEID # 3743–44.)

The family's lawsuit was filed on March 15, 2016, in Phelps County, Missouri (the "Missouri Litigation"). (ECF No. 150-1, PAGEID # 3374.) Within days, Diamond entered into an Agreement to Limit Recovery Under Missouri Statute Section 537.065, under which the plaintiffs agreed not to proceed against Diamond's personal assets in exchange for the full limits of the Granite policy. (ECF No. 14-1, PAGEID # 2359–76.)

Sixteen months went by. Then, on July 12, 2017, the plaintiffs filed an amended complaint, adding Kroger as a defendant. (ECF No. 150-1, PAGEID

# 3389–3407.) The amended complaint alleged that Kroger was negligent and reckless in its retention, selection, and hiring of Diamond. (*Id*.)

The first time Kroger learned that the December 13, 2015 accident resulted in fatalities was when it was served with the amended complaint. (Cole Dep. 2, ECF No. 153, PAGEID # 3876.)

## C.    Kroger demands indemnification from Diamond

Kroger believed that, under the terms of the Transportation Agreement[4], it was entitled to indemnity and a defense from Diamond. (*See* ECF No. 144-1, PAGEID # 2468.) It also believed, for the same reason, that Diamond had procured insurance covering Kroger. (*See id*.) Accordingly, on September 8, 2017, Kroger's counsel, Attorney David A. Dick, sent a letter to Diamond's counsel in the Missouri Litigation "formal[ly] demand[ing] insurance coverage and indemnity arising out of the December 13, 2015 collision[.]" (*Id*.) Kroger simultaneously filed a cross-claim in the Missouri Litigation demanding indemnification and contribution from Diamond. (ECF No. 156.)

By November, Diamond had not taken any action to indemnify Kroger or take up its defense. Although the surrounding details are unclear, Diamond executed an Indemnity Agreement dated November 22, 2017, in which it agreed to indemnify and hold Kroger harmless from "any claim or liability arising from" the

---

[4] By this time, a new Transportation Agreement had been signed by Diamond and Kroger. (2016 Transportation Agreement, ECF No. 27-1.) The 2010 and 2016 Transportation Agreements are virtually identical.

December 13, 2015 accident. (Indemnity Agreement, PAGEID # 51.) Beyond signing and returning the Agreement, Diamond took no action at that time.

On June 1, 2018, Kroger, through Attorney Dick, sent another demand letter, this time attaching bills for attorney fees accrued to-date. (ECF No. 145-1, PAGEID # 2759.)

### D. Kroger withholds payment for Diamond's services

Having received no response from Diamond, Kroger began to discuss alternative loss mitigation strategies in July 2018. (Cole Dep. 1, 47:10–13.) "[R]ight around the end of July, beginning of August[,]" Kroger withheld Diamond's payments, relying on the set-off provisions of the Transportation Agreement. (*Id.*, 47:22–48:5.) The set-off was in effect for all Diamond services rendered after July 15, 2018. (*Id.*, 79:17–20.) Michael Cole, the Kroger Operations Manager responsible for the Diamond relationship, was directed "not to reach out to" Diamond about the withholding. (*Id.*, 48:13–17.)

The withholding did not go unnoticed for long. On August 15, 2018, Diamond's billing department emailed Kroger, advising that they had not been paid in three weeks and asking when the next payment was scheduled. (ECF No. 142-1, PAGEID # 2206.) Diamond's President, Dave Atwal, emailed Mr. Cole directly on August 23:

Michael,

Can you help me figure out what is going with my payment from Kroger I have tried to call Cass [the payment platform] but have not got any answers. Also I have been working with Lynda in your office past two weeks to get answer but haven't gotten any answers. Lynda

5

has all the details on the last payments and what is due now. I would really appreciate help on this asap.

(*Id.*, PAGEID # 2208 (reproduced as written).) Mr. Cole did not immediately

respond. On August 24, Mr. Atwal sent another email:

> Michael,
>
> I waited until end of the day to hear from you. I haven't heard anything yet. I haven't gotten paid over a month without answer. Lynda keeps on telling me that she is trying to get answer. I feel like Lynda is just putting me off. Sorry but I will not be able to accept any more tenders after this weekend. Once again sorry it just too much money not to get paid on. Sorry for any inconvenience I may have caused with this matter.

(*Id.*, PAGEID # 2209 (reproduced as written).) Mr. Cole responded that night:

> Dave,
>
> We have been trying to get our bid complete and I was planning to look into this Monday. Completely understand your position, until we can get this fixed.

(*Id.*, PAGEID # 2210.)

Mr. Atwal emailed again the following Monday, August 27, asking for an

update. (*Id.*, PAGEID # 2212.) On Tuesday, August 28, 2018, Mr. Cole responded:

> Dave,
>
> I believe we have found the issue and we should have a payment coming your way at the end of this week. We will continue to track the status and advise when the payment should arrive on your end. Through Lynda's work the past couple of weeks, we have discovered an issue with the routing of payments that we believe is now cleared up.

(*Id.*, PAGEID # 2213.) Mr. Atwal thanked Mr. Cole, only to email again on August

30 and September 4, inquiring as to the status of payment. (*Id.*, PAGEID # 2213–

16.)

6

The mystery was solved later on September 4, when Attorney Dick sent a third demand letter to Diamond's counsel, which reiterated Kroger's position and revealed that Kroger was withholding payment to Diamond "pending further resolution of this matter." (ECF No. 145-1, PAGEID # 2763.)

In total, Kroger withheld $1,767,383.16. (*Id.*, PAGEID # 2173.)

## E.     Granite refuses to cover Kroger in the Missouri Litigation

On October 12, 2018, AIG Claims Inc., the claims administrator on Diamond's Granite policy, sent a letter to Attorney Dick. (ECF No. 152-3, PAGEID # 3819–20.) Therein, the claims adjuster concluded:

> . . . Kroger is not an insured under the policy issued to Diamond Transportation Logistics. In addition, the defense costs sought are not covered by the policy issued to Diamond Transportation Logistics; the indemnification agreement entered into by Diamond Transportation is not binding on AIG; and AIG is not responsible for, nor will it pay, any defense costs incurred by Kroger, as a result of said agreement between Kroger and Diamond Transportation. Furthermore, the policy limits were exhausted by a settlement payment issued in this loss.

(*Id.*)

## F.     Diamond agrees to take on Kroger's defense

The previous day, Diamond's counsel sent Attorney Dick a letter stating:

> Pursuant to the Non-Dedicated Contract Carrier Transportation Agreement between [Kroger] and Diamond effective January 13, 2010 Diamond hereby agrees to defend, hold harmless and indemnify Kroger in the above matter. To that end we have made arrangements to retain Francis X. Duda of Anderson & Gilbert, L.C. of St. Louis, Missouri to defend Kroger. Mr. Duda is AV rated and he and his firm are very skilled defense attorneys with a broad range of experience in trucking matters.
>
> We understand that Kroger contends that it has previously tendered its defense and that the tender(s) were not accepted by Diamond. Diamond is now accepting the tender. We are advised that there is

7

neither a trial date nor apparently a trial setting date in the matter.
As a result, Kroger will not suffer any prejudice by the change in
counsel at this time.

(ECF No. 145-1, PAGEID # 2764.) Attorney Dick responded, noting Kroger's

disagreement with the statement in your letter that Kroger has not
been prejudiced by Diamond's failure to respond for more than a year.
Kroger has paid my firm's legal expenses. Our firm has handled the
defense of this case throughout, including dozens of conversations with
potential witnesses and extensive efforts to respond to plaintiff's
burdensome discovery requests. Kroger's corporate designee deposition
on more than 20 topics is scheduled for October 25. The parties have
scheduled mediation for November 12, 2018. There is no practical way
for an attorney who has not been involved in this case to protect
Kroger's interests at the deposition and mediation.

. . .

Accordingly, Kroger plans to continue its defense as previous, and
Kroger reserves all rights against Diamond under the parties' contract
and otherwise.

(*Id.*, PAGEID # 2766–67.) Diamond's counsel returned a "demand[ ] that [Kroger]

cancel the mediation scheduled for November 12, 2018 to allow the carrier and/or

Diamond to 'get up to speed' and attend and participate[.]" (*Id.*, PAGEID # 2768.)

### G.    Kroger settles with the Missouri Litigation plaintiffs

The mediation went forward as scheduled, and Kroger resolved all claims

against it in the Missouri Litigation for roughly $2.3 million.[5]

## II.    PROCEDURAL BACKGROUND

Now three years old, this litigation has involved many parties, claims, and

issues. A brief recitation of its history is helpful.

---

[5] The exact amount of the settlement is unknown. Deposition testimony
places it anywhere from $2.2 to 2.4 million. (Quast Dep., ECF No. 145, 104:1–2;
Cole Dep. 2, PAGEID # 3943; Wulfeck Dep., ECF No. 146, 85:3.)

In December 2019, Diamond filed a four-count Complaint against Kroger, Granite, AIG, and G.M. Lawrence Insurance Brokerage (the brokerage firm that Diamond used to procure the Granite policy). (Compl., ECF No. 1.) Within six months, Diamond voluntarily dismissed its claims against AIG and G.M. Lawrence. (ECF No. 45.) But both Kroger (Countercl., ECF No. 27) and Granite (ECF No. 57) filed counterclaims against Diamond.

Kroger also filed a crossclaim against Granite and a third-party complaint rejoining G.M. Lawrence. (ECF No. 75.) The Court later dismissed Kroger's third-party complaint (ECF No. 118), and Kroger voluntarily dismissed its crossclaim (ECF No. 186).

After briefing their summary judgment motions, Diamond, Kroger, and Granite participated in mediation. (ECF No. 195.) Diamond and Granite were able to resolve their claims and counterclaims. (ECF No. 203.) Diamond and Kroger were not. Diamond's claims against Kroger, and Kroger's counterclaims against Diamond, remain.

As to Diamond's Complaint: Diamond moves for summary judgment on Count One (Breach of Contract) (ECF No. 157); and Kroger moves for summary judgment on Counts One, Two (Fraud), and Five (Unjust Enrichment) (ECF No. 173).[6]

---

[6] Counts Three and Four are no longer before the Court. Count Three was against AIG and Granite. (Compl., ¶¶ 48–54.) Count Four was against G.M. Lawrence. (*Id.*, ¶¶ 55–62.)

As to Kroger's Counterclaim: Kroger moves for summary judgment on Counterclaims One (Breach of Contract—Failure to Indemnify and Defend), Two (Breach of Contract—Failure to Procure Insurance Coverage), Three (Breach of Contract—Failure to Comply with Applicable Laws), and Five (Fraudulent Misrepresentation) (ECF No. 174); and Diamond moves for summary judgment on Counterclaims One, Two, Three, Four (Fraudulent Inducement), and Five (ECF No. 158).

## III. MOTION TO STRIKE

The Court will first address Kroger's Motion to Strike the Testimony and Expert Report of Ted L. Perryman. (ECF No. 175.) The admissibility of expert testimony is governed by Federal Rule of Evidence 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
>> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>>
>> (b) the testimony is based on sufficient facts or data;
>>
>> (c) the testimony is the product of reliable principles and methods; and
>>
>> (d) the expert has reliably applied the principles and methods to the facts of the case.

The Rule incorporates the Supreme Court's instruction in *Daubert v. Merrell Dow Pharma., Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). *See* Fed. R. Evid. 702 advisory committee's notes to 2000 and 2011 amendments. This Court serves as a "gatekeeper," tasked with "ensuring that an

10

expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. Courts are afforded "considerable leeway" in determining whether to admit expert opinion testimony and how to test its reliability and relevance to the case at bar. *Kumho Tire*, 526 U.S. at 152. Nonetheless, the Federal Rules of Evidence provide a "permissive backdrop," favoring the admission of expert opinion testimony. *Daubert*, 509 U.S. at 588–89. The proponent of the expert testimony bears the burden of proving its admissibility. *See* Fed. R. Evid. 104(a); *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 478 (6th Cir. 2008).

In support of its motions, Diamond offers the expert report and opinion testimony of Ted L. Perryman, an attorney licensed to practice in Missouri and Illinois. (Perryman Report, ECF No. 157-1, PAGEID # 4339.) After reviewing materials relevant to the Missouri Litigation, Attorney Perryman opined:

 a. To the extent Kroger paid plaintiff any settlement money, it did not do so on the basis of Diamond's negligence or fault. As explained in [the Report and Analysis (*id*., PAGEID # 4349)], Kroger was not vicariously liable for Diamond's negligence. It was neither alleged nor was any evidence adduced to suggest otherwise.

 b. To the extent Kroger paid plaintiffs any settlement money, it did not do so based upon the negligent selection of Diamond as a "motor carrier". There is no evidence that suggests that Diamond was not a competent and careful motor carrier when selected by Kroger.

 c. To the extent Kroger paid plaintiff any settlement money, it did so on its own negligence and not that of Diamond.

 d. Diamond was not serving as broker under the applicable Federal regulations with regard to the load transported for Kroger which was involved in the accident which was the subject of the Missouri Case.

11

(*Id.*, PAGEID # 4340.)

Kroger argues that Attorney Perryman's testimony is comprised of legal conclusions that are not helpful to a jury and invade the province of the judge and jury, and so must be stricken. The Court agrees.

The Sixth Circuit "requir[es] exclusion of expert testimony that expresses a legal conclusion." *Berry v. City of Detroit*, 25 F.3d 1342, 1354 (6th Cir. 1994) (adopting the holding of *Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992)). "Expert testimony on the law is excluded because the trial judge does not need the judgment of witnesses." *U.S. v. Zipkin*, 729 F.2d 384, 387 (6th Cir. 1984). "[A]ttorneys as expert witnesses present unique challenges" because their qualifications and experience tend to make them 'experts' in an area off-limits for testimony. *Stryker Corp. v. XL Ins. Am.*, No. 1:17-cv-66, 2020 WL 13443035, at *1 (W.D. Mich. July 22, 2020) (citing *Hyland v. HomeServices of Am., Inc.*, 771 F.3d 310, 322 (6th Cir. 2014)).

In the first two sentences of opinion a., the first sentence of opinion b., and opinions c. and d., Attorney Perryman uses "specialized legal terminology" to render conclusory opinions on Kroger's liability in tort and Diamond's performance under the Transportation Agreement. *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 317 (6th Cir. 2019). In other words, those portions of Attorney Perryman's testimony are impermissible legal conclusions. They are properly excluded. *See id.* at 316 (requiring courts to exercise exclusionary power with precision).

That leaves the final sentences of opinions a. and b. There, Attorney Perryman opines as to the existence or absence of relevant evidence. But a jury would be fully competent to form the same, or different, conclusions. These sentences do nothing to "assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592. They are also properly excluded.

Kroger's Motion to Strike (ECF No. 175) is **GRANTED**.

## IV. MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. *See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the nonmoving party).

The Court begins its discussion by noting that this case was, stated generously, inefficiently argued. Over the course of twelve briefs on four[7] motions, two general arguments are repeated—in many instances, truly copied and pasted—six times. Because the briefing fails to provide a useful framework for analysis, the Court will analyze the arguments on a claim-by-claim basis, rather than motion-by-motion.

### A.    Diamond's Claims

#### 1.    Breach of Contract

Count One of Diamond's Complaint alleges that Kroger breached the Transportation Agreement when it "refus[ed] to permit Diamond to defend Kroger and subsequently settl[ed] the [Missouri Litigation], without any participation from Diamond" and used the "improperly withheld funds" to do so. (Compl., ¶¶ 29–32.) The claim implicates both Diamond's indemnification obligations and Kroger's set-off rights.

---

[7] Even though the Complaint and Counterclaim allege mirror-image claims, Diamond and Kroger each filed two motions for summary judgment. As a result, the Court had before it four different statements of the facts, four recitations of the elements of an Ohio breach of contract claim, and far too much paper—all before a single response was filed. Less would have been more.

Although Count One alleges only a breach of the Transportation Agreement, the Indemnity Agreement is so intertwined with the parties' arguments that it is helpful and efficient to discuss both.

Under Ohio[8] law, a breach-of-contract claim requires the plaintiff to prove that (i) a contract existed, (ii) the defendant "fail[ed] without legal excuse . . . to perform when performance [was] due," and (iii) the plaintiff was damaged by that failure. *Lucarell v. Nationwide Mut. Ins. Co.*, 97 N.E.3d 458, 469 (Ohio 2018). The parties here dispute who performed, who failed to perform, and whether there was any legal excuse.

The Court begins by interpreting the relevant contracts. "Under Ohio law, the interpretation of written contract terms, including the determination of whether those terms are ambiguous, is a matter of law for initial determination by the court." *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 763 (6th Cir. 2008). "[A] contract is 'unambiguous' if a reviewing court 'can give a definite legal meaning' to the contract's terms." *United States v. Ohio*, 787 F.3d 350, 353 (6th Cir. 2015) (quoting *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003)). Where a contract's terms are not ambiguous, the interpreting court must apply the plain language of the contract. *Savedoff*, 524 F.3d at 763. The court must presume that interpreting

---

[8] This case is before the Court on diversity jurisdiction. *See* 28 U.S.C. § 1332. "[F]ederal courts sitting in diversity apply the substantive law of the forum state and federal procedural law." *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009) (citing, *inter alia*, *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1939)). The Transportation Agreement provides that it will be governed by Ohio law. (Transportation Agreement, § 20.1.) Without specific reference to the Transportation Agreement, both parties apply Ohio law in their motion papers. Accordingly, the Court will apply Ohio substantive law in its analysis.

the plain language will give rise to the parties' intent. *Id.* Only where a contract is ambiguous may the court look to extrinsic evidence to ascertain the parties' intent. *Id.*; *Ohio*, 787 F.3d at 354.

Here, neither the Transportation Agreement nor the Indemnity Agreement are ambiguous. They can only be interpreted to possess one legal meaning. The Court is thus bound to apply the plain language of the contracts.

> **(a)** **Diamond is obligated under the Transportation Agreement to indemnify and defend[9] Kroger in the Missouri Litigation.**

Both the Transportation Agreement and the Indemnity Agreement contain language requiring Diamond to indemnify Kroger in certain circumstances. Schedule C of the Transportation Agreement provides, in relevant part, that Diamond:

> does hereby expressly agree to indemnify, defend and hold harmless [Kroger], its affiliates and subsidiaries and their respective directors, officers, employees, agents, successors and assigns ("Indemnitees") from and against any and all suits, actions, liabilities, judgments, claims, demands, or costs or expenses of any kind (including attorney's fees) resulting from (i) damage or injury (including death) to the property or person of anyone, whomsoever they may be, arising or resulting at any time or place from any operations hereafter performed either by [Diamond], its agents, employees or subcontractors in performing services for Kroger or (ii) the negligence, willful misconduct or violation of law by [Diamond], its agents, employees or subcontractors except to the extent that such liability is caused by the sole negligence or willful misconduct of Kroger.

---

[9] Although the duty to indemnify and the duty to defend are legally distinct, the parties do not argue that any difference applies or is of consequence. Accordingly, the Court discusses the duties as though they are one under the Transportation Agreement.

16

(2010 Transportation Agreement, PAGEID # 29.) The Missouri Litigation falls squarely within the bounds of clause (i)—the plaintiffs sought compensation for three deaths arising and resulting from operations performed by Diamond (and its agents and subcontractors) in hauling Kroger goods.

The Indemnity Agreement scarcely requires interpretation. In that document,[10] signed November 22, 2017, Diamond agreed to indemnify Kroger as to "any claim or liability arising from" the "December 13, 2015 collision involving [Diamond] and resulting in the death of 3 persons in Phelps County, Missouri." (Indemnity Agreement.) *But see*, Section IV.A.1.(a)(1), *infra*.

Diamond argues that Kroger is, nonetheless, not entitled to indemnification for three reasons: (1) The indemnification provisions are void as against public policy; (2) When strictly construed against Kroger, the Transportation Agreement does not allow Kroger indemnity for its own negligence; and (3) The indemnification provisions do not comport with Ohio common law of indemnity. While Diamond is correct that the Indemnity Agreement cannot protect Kroger from its own negligence, Schedule C of the Transportation Agreement requires Diamond to indemnify Kroger in the Missouri Litigation.

---

[10] Diamond suggests that the Indemnity Agreement is invalid for lack of consideration. (ECF No. 157, 11 n.1.) The question is "adverted to in a perfunctory manner" and is "unaccompanied by [any] effort at developed argumentation." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997). Accordingly, any argument that the Indemnity Agreement is void for want of consideration is deemed waived. *Id.*

(1)     **The Indemnity Agreement is void to the
        extent it protects Kroger from its own
        negligence.**

Diamond first argues that Schedule C and the Indemnity Agreement are void

as against public policy. On December 9, 2015, the Ohio General Assembly passed

House Bill 71, enacting Ohio Revised Code § 2305.52. 2015 Ohio Laws File 33 (H.B.

71). The statute, which went into effect on March 23, 2016, provides, in part:

> [A] provision, clause, covenant, or agreement contained in, collateral
> to, or affecting a motor carrier transportation contract that purports to
> indemnify, defend, or hold harmless, or has the effect of indemnifying,
> defending, or holding harmless, the promise from or against any
> liability for loss or damage resulting from the negligence or intentional
> acts or omissions of the promise is void as against public policy.

Ohio Rev. Code § 2305.52(A).

In Diamond's view, Ohio Rev. Code § 2305.52(A) bars Kroger from seeking

indemnification for its own negligence under either the Transportation Agreement

or the Indemnity Agreement. Kroger argues in response that the Transportation

Agreement pre-dates the statute's effective date and is, accordingly, unimpacted by

it. The Court agrees with Kroger.

More than forty years ago, the Ohio Supreme Court discussed the retroactive,

versus prospective, effect of the then-recently-enacted § 2305.31—another anti-

indemnification statute. *Jennyo v. Warner & Swasey Co.*, 385 N.E.2d 630 (Ohio

1979) (per curiam). The court there explained, and held, as follows:

> R.C. 1.48 provides that "[a] statute is presumed to be prospective in its
> operation unless expressly made retrospective." Additional weight
> must be accorded this interpretive mandate from the General
> Assembly where contractual obligations might be impaired by
> retroactive change to substantive law. Section 28, Article II of the Ohio
> Constitution.

18

> There is no express language in R.C. 2305.31 indicating that the statute was intended to retroactively invalidate indemnity provisions in contracts lawfully formed. At the time this contract was entered into by the parties and fully executed by appellant . . ., there existed no legislative or judicial declaration that such provisions contravened the public policy of this state. A contract thus conforming to public policy when made is not normally rendered unlawful by a subsequent change in state policy. Accordingly, this court finds, in compliance with R.C. 1.48, that R.C. 2305.31 does not apply retroactively so as to invalidate an indemnification agreement lawfully entered into prior to the effective date of the legislation.

*Jennyo*, 385 N.E.2d at 631.

*Jennyo* neatly applies in the present circumstance. Section 2305.52 contains "no express language" indicating retroactive effect. The Transportation Agreement was "entered into by the parties and fully executed" before the statute's effective date and is, accordingly, unaffected by the statute.[11] The Indemnity Agreement, on the other hand, was executed after the statute went into effect and is void to the extent it serves to indemnify Kroger for its own negligence.

### (2)     Even when strictly construed, the Transportation Agreement requires Diamond to indemnify Kroger in the Missouri Litigation.

Diamond next argues that the Transportation Agreement must be strictly construed against Kroger as the drafter and, when so construed, does not entitle Kroger to indemnity in the Missouri Litigation. The Court will assume that

---

[11] The 2010 Transportation Agreement was effective as of January 13, 2010. (2010 Transportation Agreement, PAGEID # 14, 24.) The 2016 Transportation Agreement was effective as of January 15, 2016. (2016 Transportation Agreement, PAGEID # 1041, 1053.)

19

Schedule C should be strictly construed. Even when doing so, Diamond's argument fails.

Schedule C provides two broad circumstances in which Diamond must indemnify Kroger. Under clause (i), Diamond must indemnify Kroger for:

> damage or injury (including death) to the property or person of anyone, whomsoever they may be, arising or resulting at any time or place from any operations hereafter performed either by [Diamond], its agents, employees or subcontractors in performing services for Kroger[.]

It requires indemnity for injury to any one, arising any time and any place, from any operation performed by Diamond for Kroger. The repeated use of that one small word—"any"—evidences the parties' intent to make the clause broadly applicable. *Cf. United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'").

Under clause (ii), Diamond must indemnify Kroger for:

> the negligence, willful misconduct or violation of law by [Diamond], its agents, employees or subcontractors **except to the extent that such liability is caused by the sole negligence or willful misconduct of Kroger.**

Diamond essentially argues that the bolded language applies to both clauses (i) and (ii), exempting Diamond from indemnifying Kroger for its own negligence in any instance. But, to accept Diamond's argument, the Court would have to do more than just strictly construe Schedule C—it would have to re-write it. The Court will not. *Shifrin v. Forest City Enters., Inc.*, 597 N.E.2d 499, 501 (Ohio 1992) ("When the terms in a contract are unambiguous, courts will not in effect create a new contract

by finding an intent not expressed in the clear language employed by the parties."); *Glaspell v. Ohio Edison Co.*, 505 N.E.2d 264, 267 (Ohio 1987) ("[E]ven a strict construction [of an indemnification clause] would require that all the words used be taken in their ordinary and popular sense.").

In context, the "sole negligence" carve-out is clearly specific to clause (ii). Neither punctuation nor language signal an intent for the carve-out to stand apart from the words that come immediately before it. Just the opposite: The parallelism between the first half of clause (ii) and the carve-out—each referencing negligence, followed by willful misconduct—signals that the clause was intended to be read as one, and that the carve-out modifies only the language in clause (ii).

What's more, even if it did apply to clause (i), the carve-out only applies to instances of Kroger's "sole negligence." Diamond argues that the claims against Kroger in the Missouri Litigation were for its "sole negligence." In doing so, it emphasizes that negligent retention is not a claim of vicarious liability—by which the retained party's negligence would be imputed to the retaining party—but instead focuses on the direct negligence of the retaining party. While that may be true, *see Evans v. Akron Gen. Med. Ctr.*, 170 N.E.3d 1, 4–5 (Ohio 2020), it does not win Diamond the day. "Sole" means only, independent, or exclusive.[12] Sole

---

[12] Merriam-Webster.com defines "sole" as:

| 1 | a: | being the only one |
|---|---|---|
|   | b: | having no sharer |
| 2: |   | functioning independently and without assistance or interference |
| 3: |   | belonging exclusively or otherwise limited to one usually specified individual, unit, or group . . . |

negligence, therefore, references the negligence of **one** party. The claims asserted against Kroger in the Missouri Litigation were in the vein of concurrent liability, requiring the negligence of **two or more** parties. *Lehrner v. Safeco Inc./Am. States Ins. Co.*, 872 N.E.2d 295, 305 (Ohio Ct. App. 2007) (explaining that negligent retention "can provide the basis for a cause of action in and of itself" but that "plaintiffs . . . cannot maintain such a claim without demonstrating that their injuries were caused by" the retained party's own negligence). *See also Concurrent Negligence*, Black's Law Dictionary (11th ed. 2019) ("The negligence of two or more parties acting independently but causing the same damage.").

In sum, even when strictly construed, the plain language of Schedule C requires that Diamond indemnify Kroger for the claims asserted against it in the Missouri Litigation.

---

*Sole*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/sole (last visited Dec. 19, 2022). And Dictionary.com provides:

1. being the only one; only
2. being the only one of the kind; unsurpassed; unique; matchless;
3. belonging or pertaining to one individual or group to the exclusion of all others; exclusive
4. functioning automatically or with independent power . . .

*Sole*, DICTIONARY.COM, https://www.dictionary.com/browse/sole (last visited Dec. 19, 2022).

Diamond asserts that "[s]everal of the definitions of 'sole' in Black's Law Dictionary are 'separate' and 'opposite of joint.'" (ECF No. 157, 14.) Black's Law Dictionary (11th ed. 2019) defines "sole-actor doctrine," "sole and separate use," "sole and unconditional owner," "sole arbitrator," "sole cause," "sole corporation," "sole custody," "sole discretion," sole practitioner," "sole proprietorship," "sole selling agency," "sole-source rule," and "sole use"—but it does not define "sole." Relevant here (and cutting against Diamond's position), "sole cause" is defined as "[t]he only cause that, from a legal view-point, produces an event or injury." *Sole Cause*, Black's Law Dictionary (11th ed. 2019).

### (3) The Transportation Agreement expresses a clear intent to abrogate the common law on indemnification for voluntary settlements.

Finally, Diamond argues that Kroger is not entitled to indemnification for its voluntary settlement of the Missouri Litigation because Kroger fails to meet the relevant requirements under Ohio law. Nearly eighty years ago, the Ohio Supreme Court held:

> the fact of voluntary payment does not negative the right to indemnity. However, the one seeking indemnity, after making voluntary settlement, must prove [(1)] that he has given proper and timely notice to the one from whom it is sought, [(2)] that he was legally liable to respond and [(3)] that the settlement effected was fair and reasonable.

*Globe Indem. Co. v. Schmitt*, 53 N.E.2d 790, 794 (Ohio 1944). Thus, an indemnitee may be entitled to indemnification from an indemnitor, even when the indemnitee voluntary settled claims without the indemnitor's involvement—but only if three requirements are met.

The court recently confirmed that the *Globe* requirements may be abrogated by the parties to a contract, but required that the language of the contract "evinces a clear intent" to do so. *Wildcat Drilling LLC v. Discovery Oil & Gas LLC*, 173 N.E.3d 1156, 1161 (Ohio 2020); *Total Quality Logistics LLC v. JK&R Express LLC* ("*JK&R I*"), 173 N.E.3d 1168, 1172 (Ohio 2020). "[N]o talismanic or magical language is required in order to abrogate the common law through a contract. Rather, the focus is on the parties' intent, as expressed by the language the parties chose to use in their contract." *Wildcat*, 173 N.E.3d at 1161. Ohio courts have treated a clear intent to abrogate any of the *Globe* requirements as intent to abrogate all of the *Globe* requirements. *See Total Quality Logistics, L.L.C. v. JK&R*

23

*Express, L.L.C.* ("*JK&R II*"), — N.E.3d —, 2022 WL 16739229, at *7 (Ohio Ct. App. Nov. 7, 2022) (concluding that the parties' broker-carrier agreement evinced a clear intent to abrogate *Globe* in part because its terms required carrier to indemnify broker for payments it made without legal obligation).

Here, the parties do not dispute that Diamond had proper and timely notice of Kroger's claim for indemnification. Diamond instead asserts that Kroger fails to prove that it was legally liable in the Missouri Litigation or that its settlement was fair and reasonable. Kroger argues that it is not required to do so, because the Transportation Agreement expresses the parties' clear intent that *Globe* does not apply.[13] The Court agrees with Kroger.

Section 7 of the Transportation Agreement provides that Diamond "will indemnify, defend and save harmless [Kroger] . . . from and against any and all suits, actions, liabilities, judgments, claims, demands, or costs or expenses of any kind as outlined in Schedule C." Schedule C similarly requires Diamond to "indemnify, defend and hold harmless [Kroger] . . . from and against any and all suits, actions, liabilities, judgments, claims, demands, or costs or expenses of any kind" resulting from an indemnifiable event. As Kroger points out, this language obligates Diamond to indemnify and defend regardless of whether Kroger is

_____

[13] In reply, Diamond regurgitates its argument about the applicability of *Globe*, citing no additional authority. (ECF No. 188, 8–9.) Beyond baldly declaring that "nothing in any of the relevant contract provisions . . . express a clear intent to abrogate the common law rules," Diamond makes no effort to analyze the language of the Transportation Agreement. (*Id.*) But that effort is what the law requires. *See JK&R I*, 173 N.E.3d at 1173 (noting that "the analysis . . . must begin with a review of the parties' contract").

ultimately found to be liable, and in advance of any finding of liability. Rather, Diamond must indemnify Kroger from "any and all . . . claims, demands, or costs or expenses of any kind[.]" The indemnification obligation is therefore triggered by the filing of a claim, the delivery of a demand, or the accrual of a cost or expense. That the *Globe* requirements are not explicitly referenced makes no difference. *JK&R II*, 2022 WL 16739229, at *4. The language of the Transportation Agreement expresses Diamond's and Kroger's clear intent to step away from the common-law framework.

> **(b)    Kroger was not required to accept Diamond's late-stage offer to take over its defense.**

Having concluded that Diamond was obligated under the Transportation Agreement to indemnify and defend Kroger in the Missouri Litigation, the Court next considers whether Kroger's October 19, 2018 refusal to accept Diamond's offer to defend constitutes a breach. Nothing in the Transportation Agreement obligated Kroger to accept Diamond's offer—its refusal cannot, therefore, form the basis of a breach. *See also* Section IV.B.1.(a) (discussing whether Diamond's offer constitutes performance in light of the attendant circumstances), *infra*.

> **(c)    The Transportation Agreement permitted Kroger to withhold the funds.**

The final component of Count One pertains to Kroger's decision to withhold payment to Diamond for services rendered during the pendency of the Missouri Litigation. Paragraph 2.4 of the Transportation Agreement provides:

> [Kroger] shall have the right to set off against any amounts payable to [Diamond] any claims [Kroger] may have with [Diamond], provided [Kroger] has previously . . . given prior written notice of any other claim against [Diamond] . . . as to which [Diamond] has not paid, declined or offered a compromise of settlement within sixty (60) days.

25

(Transportation Agreement, PAGEID # 15.)

Kroger first demanded indemnity from Diamond on September 8, 2017. When, after ten months, Kroger was still waiting for Diamond to take up its cause, Kroger demanded indemnity again—this time, attaching substantiation of attorney fees expended to-date. Two months later, Kroger decided to withhold funds for Diamond's services. Kroger acted within its rights under Paragraph 2.4.

Diamond argues for the opposite conclusion. In its view, Kroger's actions were improper, notwithstanding Paragraph 2.4, because there was no "definite amount owed." Diamond cites to a 1938 Ohio Supreme Court case discussing Ohio's common law principles of set-off for support. In *Witham v. S. Side Bldg. & Loan Ass'n of Lima*, 15 N.E.2d 149, 150 (Ohio 1938), the court stated:

> It is that right which exists between two parties, each of whom under an independent contract owes a definite amount to the other, to set off their respective debts by way of mutual deduction.

Here, the competing obligations—indemnity and payment for services—do not arise under independent contracts. The principle is, accordingly, inapposite. *See Monroe Retails, Inc. v. RBS Citizens, N.A.*, 589 F.3d 274, 285 (6th Cir. 2009) (citing *Pruitt v. LGR Trucking, Inc.*, 774 N.E.2d 273, 277–78 (Ohio Ct. App. 2002)).

Kroger did not breach the Transportation Agreement. Summary judgment is **GRANTED** to Kroger on Count One of the Complaint.

### 2. Fraud

Diamond's Count Two alleges that, on two occasions, Kroger fraudulently induced Diamond to perform services for which Kroger had no intention of paying. (Compl., ¶¶ 33–47.) Kroger is entitled to summary judgment as to both.

26

Under Ohio law, the elements of fraud are:

> (1) a representation (or concealment of a fact when there is a duty to disclose) (2) that is material to the transaction at hand, (3) made falsely, with knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, and (4) with intent to mislead another into relying upon it, (5) justifiable reliance, and (6) resulting injury proximately caused by the reliance.

*Volbers-Klarich v. Middletown Mgmt., Inc.*, 929 N.E.d2d 434, 440 (Ohio 2010) (citation omitted). Fraud in the inducement relates to the facts surrounding an agreement's execution, rather than the nature or purpose of the agreement itself. *Haller v. Borror Corp.*, 552 N.E.2d 207, 210 (Ohio 1990).

In its first allegation of fraud, Diamond purports that Kroger fraudulently induced it to sign the Indemnity Agreement by representing in November 2017 that Kroger would cease doing business with Diamond if the Agreement was not returned executed. Diamond alleges that the representation was false because Kroger had no intention of paying Diamond for the services later rendered. The record makes clear, however, that Kroger continued to use Diamond's services to haul Kroger goods and, until late-Summer 2018, those services were paid-for. In fact, between November 22, 2017, and July 15, 2018, Kroger paid Diamond nearly $10 million for services rendered. (Atwal 2021 Dep., ECF No. 160, 102:21–103:7.) The record further reflects that the decision to withhold payment from Diamond was not made until late-Summer 2018. The third element of fraud—falsity of the representation—is plainly missing.

Diamond further alleges that Kroger fraudulently represented in August 2018 that unpaid invoices were held up due to "an accounting problem on Kroger's

part that would be rectified." (Compl., ¶ 38.) To be sure, Mr. Cole stated in an August 28, 2018 email to Mr. Atwal that Kroger "should have a payment coming your way at the end of th[e] week" after his team "discovered an issue with the routing of payments[.]" But whether this statement was made falsely does not much matter, because Diamond stopped receiving loads from Kroger days before it was made. On Friday, August 24, Mr. Atwal emailed Mr. Cole, advising that Diamond "will not be able to accept any more tenders after this weekend." The evidence reflects as much—Diamond did not accept any future Kroger loads. (Cole Dep. 1, 74:9–11.) In other words, Diamond did not rely on Mr. Cole's August 28, 2018 statement to its detriment.

Diamond argues in response that it was actually Kroger's failure to disclose its intention to withhold payment that constituted a fraud. (ECF No. 178, 19.) While Kroger's decision to keep Diamond in the dark on its plan to withhold payment may have contributed to the mess the parties find themselves in now, it had no duty to disclose its intentions. *See Blon v. Bank One, Akron, N.A.*, 519 N.E.2d 363, 367 (Ohio 1988) (discussing those "certain circumstances" giving rise to a duty to speak and finding that parties to a transaction "stand[ing] at arm's length" do not owe one another such a duty). Accordingly, it does not rise to the level of fraud.

Summary judgment is **GRANTED** to Kroger on Count Two of the Complaint.

### 3. Unjust Enrichment

In Count Five, Diamond alleges that Kroger was unjustly enriched by the fracas surrounding the Missouri Litigation. Kroger moves for summary judgment.

28

Under Ohio law, "[u]njust enrichment operates in the absence of an express contract to prevent a party from retaining money or benefits that in justice and equity belong to another." *Robins v. Glob. Fitness Holdings, LLC*, 838 F. Supp. 2d 631, 646 (N.D. Ohio 2012) (internal quotation and citation omitted) (original alterations omitted). The unjust enrichment claim arises out of a "quasi-contract implied by the court." *Gascho v. Glob. Fitness Holdings, LLC*, 863 F. Supp. 2d 677, 699 (S.D. Ohio 2012) (Smith, J.) (internal quotation and citation omitted). But "Ohio law does not allow parties to seek damages under quasi-contractual theories of recovery . . . when a contract governs the relationship." *Id.* (internal quotations and citations omitted). In other words, "a plaintiff may not recover under the theory of unjust enrichment when an express contract covers the same subject." *Bihn v. Fifth Third Mortg. Co.*, 980 F. Supp. 2d 892, 904 (S.D. Ohio 2013) (Rose, J.). Here, the Transportation Agreement governs. Diamond concedes as much. (ECF No. 178, 21.) Accordingly, its unjust enrichment claim fails as a matter of law.

Summary judgment is **GRANTED** to Kroger on Count Five of the Complaint.

## B.     Kroger's Counterclaims

The Court now turns to Kroger's Counterclaims asserted against Diamond.

### 1.     Breach of Contract — Indemnify and Defend

Kroger first alleges that Diamond breached the Transportation Agreement by failing to indemnify and defend it in the Missouri Litigation. (Countercl., ¶¶ 29–34.) The Court has already concluded that Diamond was obligated under the Transportation Agreement to do so. *See* Section IV.A.1.(a), *supra*. The question

29

remaining is whether Diamond's October 11, 2018 offer to take over Kroger's defense constitutes performance.

Kroger argues that Diamond's offer was not really performance, but was instead a "sham" offer. To support its position, Kroger notes that:

- Kroger was the only defendant remaining in the Missouri Litigation (and had been for some time);

- Kroger's corporate representative was to be deposed in two-weeks' time, and mediation was set for two weeks thereafter;

- Kroger's counsel had represented its interests in the Missouri Litigation for more than a year; and

- Kroger had been demanding that Diamond defend it for more than a year without any response.

In Kroger's view, Diamond repudiated the Transportation Agreement by failing to respond and then making an unreasonable offer to take over Kroger's defense on the eve of critically important milestones in the litigation. Diamond argues that it offered to take over Kroger's defense as soon as it became clear that Granite would not; and that it did not "refuse" to defend Kroger so much as it failed to deliver "a timely response" to Kroger's demands for defense. It further argues that, because the Missouri Litigation was not yet set for trial, Kroger would not have been prejudiced by changing counsel in October 2018.

Kroger cites to *Bakos v. Insura Prop. & Cas. Ins. Co.*, 709 N.E.2d 175 (Ohio Ct. App. 1997) and *Bank One NA v. Echo Acceptance Corp.*, 380 F. App'x 513 (6th Cir. 2010) to support the position that it was permitted to settle the Missouri Litigation without Diamond's involvement. In both cases, the defendant-indemnitor expressly refused to indemnify the plaintiff-indemnitee, and the courts determined

that such refusal released the plaintiff-indemnitee from its further obligations under the respective contracts. Diamond argues that *Bakos* and *Bank One* are inapplicable because Diamond never expressly refused to indemnify Kroger. Diamond cites no legal authority whatsoever.

On the facts now before it, the Court finds that Diamond constructively refused to indemnify and defend Kroger. Accordingly, *Bakos* and *Bank One* are applicable and persuasive.[14]

The Amended Complaint, naming Kroger as a defendant, was filed in the Missouri Litigation on July 12, 2017. As of that filing, Diamond was obligated under the Transportation Agreement to indemnify and defend Kroger. Kroger sent its first demand letter to Diamond on September 8, 2017. Kroger filed its cross-claim demanding indemnification that same day. Diamond neither responded nor took any action to indemnify or take up Kroger's defense.

Two months later, Kroger demanded that Diamond sign and return the Indemnity Agreement. Diamond did so on November 22, 2017—but still took no action to indemnify or take up Kroger's defense.

Seven months passed. On June 1, 2018, Kroger sent another letter demanding indemnification and defense from Diamond, this time attaching attorney fees accrued to-date. Diamond neither responded nor took any action.

---

[14] Ohio law also imposes an implied duty on contracting parties to perform within a reasonable time. *See Morton Bldgs., Inc. v. Correct Custom Drywall, Inc.*, No. 06AP-851, 2007 WL 1641155, at *3 (Ohio Ct. App. 2007). Although the parties do not argue this theory, it is equally applicable and supports the Court's finding that Diamond's failure to respond to Kroger's requests to indemnify and defend was a breach of the Transportation Agreement.

Three more months passed. On September 4, 2018, Kroger wrote a third letter demanding indemnification, revealing that it had been withholding payment for Diamond's services.

Finally, on October 11, 2018, Diamond, through counsel, agreed to take on Kroger's defense in the Missouri Litigation. To that point, Kroger had been actively defending itself in the case. Kroger had also delivered three demand letters, filed a cross-claim, and obtained a specific, supplemental Indemnity Agreement, all asserting a right to indemnification from Diamond. Kroger's corporate representative was set to be deposed on October 25, 2018, and a mediation was scheduled to take place on November 12. The same counsel, Attorney David Dick, had been representing Kroger continuously for the preceding fifteen months.

It is disingenuous (at best) to cast Diamond's prolonged silence as a mere 'delayed response' to Kroger's repeated requests for the attention due under the Transportation Agreement. To suggest that changing counsel at that crucial juncture would not have impaired Kroger's prospects in the litigation is similarly outlandish. No reasonable jury could find that Diamond's October 11, 2018 offer constituted performance. Diamond was, instead, in breach.

Summary judgment is **GRANTED** to Kroger on Counterclaim One.

## 2. Breach of Contract — Procure Insurance Coverage

Kroger next alleges that Diamond breached the Transportation Agreement by failing to maintain auto liability insurance that covered Kroger as an additional insured. (Countercl., ¶¶ 35–38.) Paragraph 8 of the Transportation Agreement requires Diamond to

> obtain and maintain during the term of this Agreement, policies of insurance as outlined in Schedule D. Such policies shall not contain exclusions for unattended shipments or for negligent, dishonest, fraudulent or criminal acts.

(Transportation Agreement, ¶ 8.) Schedule C similarly provides that

> [Diamond] will maintain at all times while providing services for Kroger, at [Diamond's] own cost and expense, insurance coverage of the types and in such amounts as described in Schedule D with a company that has an A.M. Best Co. rating of "A" or better. [Diamond] may comply with the required "*per occurrence*" limit through a combination of Primary and Excess Liability insurance policies. All insurance must be primary and not excess or contributing with any insurance or self-insurance maintained by Kroger. [Diamond] will deliver to Kroger, prior to providing services, a Certificate of Insurance including "The Kroger Co. and Kroger's affiliates and subsidiaries" as Additional Insured.

(*Id.*, Schedule C.)

The relevant portion of Schedule D[15] is reproduced below:

The Kroger Co. and/or Kroger's affiliates and subsidiaries ("Kroger") may require higher insurance coverage limits and/or different coverages for certain product and service providers.

| Underwritten by insurance companies rated A- or higher by A.M. Best |
| --- |
| Cancellation Days Notice: Thirty (30) Days |
| Additional Insured: "The Kroger Co. and Kroger's affiliates and subsidiaries" |

| Must be shown as additional wording on Certificates: "The Kroger Co. and Kroger's affiliates and subsidiaries and Subsidiaries are Additional Insureds" "Primary and Non-Contributory" (except Workers's Compensation) Waiver of Subrogation in favor of The Kroger Co. | Certificate Holder Address: The Kroger Co. and Kroger's affiliates and subsidiaries Attn: Non-Dedicated Contract Carriers C/o Ebix BPO PO Box 881639 San Diego, CA 92168 |
| --- | --- |
| Must be shown as additional wording on Certificate: All insurance policies excluding workers compensation must be "primary & non-contributory" | |

\* \* \*

Auto Liability

| Any Auto | Yes |
| --- | --- |
| Combined Single Limit (Bodily injury and property) | 2,000,000 \**Important!! This limit must be met. Use of Excess or Umbrella Limits above Auto Liability is acceptable, if such limits assist in meeting the $2,000,000 Each Occurrence Limit.* |

*Note: As it concerns Auto Liability, a combination of "All Owned Autos, Hired Autos & Non-Owned Autos" OR "Schedules Autos, Hired Autos & Non-Owned Autos" is acceptable*

(*Id.*, Schedule D.)

Diamond's auto liability insurance policy in effect at the time of the accident was underwritten by Granite. After Kroger was named as a defendant in the Missouri Litigation, Granite (through AIG) took the position that Kroger was not covered under that policy—as an additional insured or otherwise. There is no evidence before the Court as to how or why Kroger was not named as an additional insured under the Granite policy. But ensuring that Kroger was so named was

---

[15] The 2010 Transportation Agreement and 2016 Transportation Agreements each contain a Schedule D. Though not identical, the two Schedule Ds are substantially similar. (*Compare* PAGEID # 30 *with* PAGEID # 5552.) Neither party argues that they contain different substantive terms. The reproduction here is Schedule D of the 2010 Transportation Agreement.

34

Diamond's express obligation under the plain language of the Transportation Agreement. Diamond was, accordingly, in breach.[16]

Summary judgment is **GRANTED** to Kroger on Counterclaim Two.

### 3.    Breach of Contract — Compliance with Laws

In Counterclaim Three, Kroger alleges that Diamond breached the Transportation Agreement's compliance-with-laws provision by brokering freight loads without proper registration. (Countercl., ¶¶ 39–45. *See also* Transportation Agreement, ¶¶ 11.1.1., 11.1.4.)

In response, Diamond argues that the arrangement made for the load involved in the accident was exempt from the registration requirement. Under federal transportation laws, a "person may provide interstate brokerage services as a broker only if that person" is registered as a broker and has satisfied certain financial security requirements. 49 U.S.C. § 14916(a). But "broker" is defined by statute to exclude "a motor carrier." 49 U.S.C. § 13102(2). Department of Transportation regulations further clarify that "[m]otor carriers . . . are not brokers . . . when they arrange . . . the transportation of shipments which they are authorized to transport and which they have accepted and legally bound themselves

---

[16] Diamond argues that it satisfied its contractual obligations, because the Transportation Agreement "do[es] not require that Kroger <u>be</u> an additional insured. [It] merely require[s] that Kroger be shown as an additional insured on certificates of insurance." (ECF No. 189, 4 (emphasis in original).) This argument is contrary to the plain language of Schedule D. What's more, it calls undesirable attention to the mysterious provenance of the December 29, 2014 Certificate of Insurance that Diamond provided to Kroger. (*See* Lawrence Dep., 103:3–25; ECF No. 147-1, PAGEID # 3120.) In context, it necessitates a reminder to counsel of their obligation to refrain from making frivolous arguments in signed filings. Fed. R. Civ. P. 11(b).

to transport." 49 C.F.R. § 371.2(a). Kroger does not dispute that Diamond is a motor carrier, or that it was authorized and legally bound to transport the accident-involved load, and offers no reason why Diamond should otherwise be considered to have breached the compliance-with-laws provision. Without evidence to support it, Diamond is entitled to judgment on Counterclaim Three.

Summary judgment is **GRANTED** to Diamond on Counterclaim Three.

### 4. Fraud

In Counterclaim Four, Kroger alleges that Diamond fraudulently induced Kroger into doing business by representing that it would indemnify and defend Kroger and that it would procure insurance naming Kroger as an additional insured. (Countercl., ¶¶ 46–55.) In Counterclaim Five, Kroger similarly alleges that Diamond fraudulently misrepresented, vis-à-vis the Indemnity Agreement, that Diamond would indemnify and defend it in the Missouri Litigation. (*Id.*, ¶¶ 56–66.) "Ohio law holds that breaching a contract does not create a tort claim." *Oak Rubber Co. v. Bank One, N.A.*, 215 F. Supp. 2d 820, 830 (N.D. Ohio 2002). Having resolved Counterclaims One and Two in Kroger's favor, it cannot also recover on Four and Five.

Summary judgment is **GRANTED** to Diamond on Counterclaims Four and Five.

V.      **CONCLUSION**

For the reasons set forth above, Kroger's Motion to Strike Testimony is

**GRANTED**. As to the Motions for Summary Judgment:

- Summary judgment is **GRANTED to Kroger** on Counts One (Breach of Contract), Two (Fraud), and Five (Unjust Enrichment) of the Complaint;

- Summary judgment is **GRANTED to Kroger** on Counterclaims One (Breach of Contract—Indemnify and Defend) and Two (Breach of Contract—Procure Insurance Coverage); and

- Summary judgment is **GRANTED to Diamond** on Counterclaims Three (Breach of Contract—Compliance with Laws), Four (Fraudulent Inducement), and Five (Fraudulent Misrepresentation).

In a forthcoming order, the Court will set this matter for trial to determine

the amount of damages.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**